UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JESSICA WATKINS,

Address Filed Under Seal,

Plaintiff,

-against-

UNITED STATES OF AMERICA
c/o U.S. Attorney's Office, District of Columbia,
601 D Street NW, Washington, DC 20530,

Defendant.

Civil Action No.

**COMPLAINT**

Plaintiff Jessica Watkins ("Plaintiff" or "Watkins"), by and through her attorneys, Raiser, Kenniff & Lonstein, brings this Complaint and respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages arising from tortious conduct by employees of the United States of America ("Defendant" or "USA"), actionable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

2. Plaintiff is a decorated United States Army combat veteran, a certified firefighter and emergency medical technician, and a transgender woman who was arrested on January 18, 2021, in connection with the events of January 6, 2021. She was convicted by a jury of multiple felony offenses and sentenced to 102 months of incarceration. She served over four years in federal and local custody, during which she was subjected to inadequate and, in some instances, deliberately indifferent medical care, including a severely overdosed hormone regimen that caused kidney damage, an unauthorized disclosure of her protected health information, and a physical assault by a Bureau of Prisons correctional officer. President Trump commuted her sentence on January 20, 2025, and she was released the following day. On August 4, 2026, the United States

District Court for the District of Columbia dismissed the underlying indictment against Plaintiff with prejudice.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b).

4. Jurisdiction over Plaintiff's claims against Defendant USA is conferred by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).

6. On October 3, 2025, Plaintiff transmitted Standard Form 95 Notices of Claim to the United States Department of Justice setting forth the claims alleged herein, including claims for inadequate medical care, medical malpractice, and the unauthorized disclosure of her protected health information.

7. As of the date of this Complaint, more than 180 days have elapsed since Plaintiff's Notices of Claim were transmitted without a final written denial by the agency, resulting in constructive exhaustion of Plaintiff's administrative remedies under 28 U.S.C. § 2675(a).

**PARTIES**

8. Plaintiff Jessica Watkins is a United States citizen and resident of the State of Ohio. She is a decorated Army combat veteran who served in Afghanistan and graduated from the Ranger Indoctrination Program, earning the Army Service Ribbon, Expert Marksmanship Qualification Badge, and Parachutist Badge, and departing service as a member of the Airborne Infantry. Following her military career, she obtained full-time firefighter and emergency medical technician certifications. She is a transgender woman whose gender identity and transition status were established and medically documented well before the events giving rise to this action.

9. Defendant is sued pursuant to the FTCA for the tortious acts and omissions of its employees, including employees of the United States Marshals Service and the Federal Bureau of Prisons, among them a treating physician at FCI Tallahassee identified as Dr. Du and a correctional lieutenant identified as Lieutenant Holmes, each acting within the scope of their employment.

## FACTUAL ALLEGATIONS

### *A. Background and January 6, 2021*

10. Jessica Watkins is a decorated Army combat veteran, a certified firefighter and EMT, and a former small business owner. She is a transgender woman whose government identification and established medical history classified her as female at all times relevant to this action.

11. On January 5, 2021, Plaintiff arrived in Washington, D.C. as a privately contracted security professional engaged to provide protective services for individuals attending events surrounding the outgoing President's speech at the Ellipse.

12. On January 6, 2021, a joint session of the United States Congress convened at approximately 1:00 p.m. to certify the Electoral College vote of the 2020 Presidential Election.

13. Plaintiff was propelled into the Capitol Building by a surge of the crowd and was inside the Capitol for approximately twenty-four minutes. After exiting the Capitol, she set up a makeshift triage camp on Capitol Grounds and provided medical treatment to multiple individuals in distress. Plaintiff left Washington, D.C. with no criminal history.

14. On January 17, 2021, the FBI and a Joint Terrorism Task Force executed a raid on Plaintiff's home in Ohio. Plaintiff was out of town at the time and returned the same day to surrender.

### *B. Arrest and Initial Confinement*

15. On January 18, 2021, Plaintiff was detained at the Montgomery County Jail in Dayton, Ohio, a facility used by the United States Marshals Service to house federal pretrial detainees. At the time of her detention, Plaintiff had a broken arm and broken ribs. The facility removed her rod-and-plate splint and replaced it with an inadequate temporary splint, and later an ill-fitting cast that caused her severe pain. Her broken ribs went untreated throughout her pretrial detention.

16. Despite her government identification and documented female gender identity, Plaintiff was housed in a men's unit and placed in solitary confinement, receiving one hour of recreation per day. She was later placed on suicide watch after complaining about her treatment and was strip-searched by a male officer and held unclothed in a transparent cell for several days.

17. Plaintiff was subsequently transported through the Butler County Jail in Cincinnati, the Grady County Jail in Oklahoma, and the Northern Neck Regional Jail in Virginia, facilities used by the USMS to hold and transport her to the District of Columbia, where she was again improperly housed with a male detainee before the error was corrected.

***C. Pretrial Detention***

18. On February 10, 2021, Plaintiff arrived at the D.C. Jail, operated by the District of Columbia Department of Corrections, where she remained in pretrial detention until her transfer to the Bureau of Prisons in August 2023.

19. During this period, Plaintiff and other January 6 defendants were subjected to extended periods of solitary confinement, denial of basic privileges including in-person visitation with counsel, and unsanitary housing conditions.

20. On the eve of trial, Jail staff demanded that Plaintiff surrender materials she had prepared for trial, resulting in the destruction of documents her defense team had relied upon.

***D. Criminal Proceedings***

21. An indictment was filed against Plaintiff on January 12, 2022, in the United States District Court for the District of Columbia, Case No. 1:22-cr-00015-APM, before the Honorable Amit P. Mehta. Plaintiff was charged with Seditious Conspiracy, Conspiracy to Obstruct an Official Proceeding, Obstruction of an Official Proceeding, Conspiracy to Prevent an Officer from Discharging Duties, Destruction of Government Property, and Civil Disorder.

22. Plaintiff proceeded to trial, which spanned from September 27 through November 29, 2022.

23. On November 29, 2022, the jury acquitted Plaintiff of Seditious Conspiracy and Destruction of Government Property and convicted her of Conspiracy to Obstruct an Official Proceeding (18 U.S.C. § 1512(k)), Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)), Conspiracy to Prevent an Officer from Discharging Duties (18 U.S.C. § 372), and Civil Disorder (18 U.S.C. § 231(a)(3)).

24. On May 26, 2023, Judge Mehta sentenced Plaintiff to 102 months of incarceration, to be followed by 36 months of supervised release.

25. Plaintiff filed a timely notice of appeal.

***E. Post-Sentencing BOP Confinement and Medical Malpractice***

26. In August 2023, Plaintiff was transferred from the D.C. Jail to the custody of the Bureau of Prisons. Before the transfer, the USMS canceled a previously scheduled skin-cancer biopsy and necessary surgery. Plaintiff's broken ribs and arm had by then healed naturally and incorrectly for want of treatment.

27. Upon transfer to BOP custody, Plaintiff was initially improperly classified as male and designated to a men's facility in Elkton, Ohio, despite a strip-search that should have

confirmed her female physical presentation. She was also designated a "terrorist" and placed in the Special Housing Unit at the Federal Transfer Center in Oklahoma City, a unit permitting no outside communication and minimal recreation.

28. After approximately two weeks, the BOP reversed its gender designation and transferred Plaintiff to a women's facility, ultimately FCI Tallahassee, though it retained her "terrorist" designation.

29. At FCI Tallahassee, a treating physician identified as Dr. Du maintained Plaintiff on a severely overdosed estrogen regimen, four times the amount appropriate for her hormonal profile, for two to three months despite Plaintiff's repeated protests, resulting in serious kidney damage manifested by pungent, purulent, and discolored urine. When Du adjusted the estrogen dosage, Plaintiff's testosterone levels remained elevated because the excess estrogen had converted to testosterone. Rather than treating this condition appropriately, Du prescribed Spironolactone at roughly twice the dose a pre-operative transgender patient would ordinarily require, and, upon realizing Plaintiff's levels were improper, threatened to ship Plaintiff to a men's facility if her testosterone levels were not lowered. Plaintiff's objections were ignored, and Health Services administrative staff deferred to Du despite awareness of his conduct.

30. The BOP pharmacy at FCI Tallahassee repurposed a medication container bearing Plaintiff's name, prescription information, and transgender medication, without fully redacting her identifying information, and dispensed it to another inmate, who displayed the container to Plaintiff in the dining facility. This unauthorized disclosure outed Plaintiff as transgender to another inmate, exposing her to a hostile environment and causing profound humiliation and emotional distress. 45 C.F.R. § 164.502. The following day, BOP Health Services confirmed the

incident in writing, stating that it had "counseled the Pharmacy regarding this practice," that the practice was "unacceptable," and that Health Services "greatly apologize[d] for this occurrence."

31. At FCI Tallahassee, Plaintiff was targeted by Lieutenant Holmes, a Bureau of Prisons correctional officer who engaged in a sustained course of hostility toward her. While Plaintiff attempted to access her medical records, Holmes refused the request and called her vile names. When Plaintiff stated her intent to escalate the matter, Holmes threatened to place her in the Special Housing Unit. Holmes subsequently cornered Plaintiff, body-slammed her from behind, shoved her face into a chain-link fence, handcuffed her, and dragged her to the Special Housing Unit, throwing hot coffee at her back in the process.

32. Despite these abuses, Plaintiff taught First Aid classes at FCI Tallahassee and served as a librarian, receiving a Certificate of Appreciation from the Bureau of Prisons.

***F. Fischer, Commutation, and Dismissal of the Indictment***

33. On June 28, 2024, the Supreme Court decided *Fischer v. United States*, 603 U.S. 480 (2024), narrowing the scope of 18 U.S.C. § 1512(c)(2) to conduct involving the impairment of the availability or integrity of records, documents, or objects used in an official proceeding.

34. On January 20, 2025, President Trump issued a proclamation commuting Plaintiff's sentence to time served. Plaintiff was released from custody on January 21, 2025, having served over four years in federal and local detention.

35. On April 14, 2026, the government moved the United States Court of Appeals for the District of Columbia Circuit to vacate the judgments of conviction against Plaintiff and her co-defendants and remand for consideration of a motion to dismiss the indictment. The D.C. Circuit granted that motion on May 21, 2026. On August 4, 2026, the District Court (Mehta, J.) granted the government's motion and supplemental motion to dismiss, ECF Nos. 967 and 979, and

dismissed the Superseding Indictment against Plaintiff and her co-defendants with prejudice. *See* Mem. Op. & Order, ECF No. 981 (Aug. 4, 2026). A termination of criminal proceedings without a conviction constitutes a favorable termination for purposes of a malicious prosecution claim, and no affirmative indication of innocence is required. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Since her release, Plaintiff has been denied multiple employment opportunities for which she is highly qualified due to the stigma associated with her prosecution.

**AS AND FOR A FIRST CAUSE OF ACTION**

*(Malicious Prosecution (FTCA) As Against Defendant USA)*

36. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

37. Defendant USA, by and through its employees, agents, and law enforcement officers acting within the scope of their employment, initiated and continued criminal proceedings against Plaintiff in *United States v. Rhodes et al.*, Case No. 1:22-cr-00015-APM, including by charging Plaintiff in Count Three of the Superseding Indictment with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).

38. Plaintiff was convicted at trial on that count, among others, and the conviction stood for approximately three years before it was vacated. The vacatur, and the subsequent dismissal of the indictment with prejudice, arose from the government's exercise of prosecutorial and executive discretion following the President's commutation of Plaintiff's sentence, and not from any judicial finding that the evidence supporting her conviction was legally or factually insufficient, or that her trial was unfair. *See* Mem. Op. & Order, ECF No. 981, at 11 (Aug. 4, 2026) (noting that the government "does not say that the charges were legally deficient or that the evidence presented is insufficient to sustain Defendants' convictions").

39. Notwithstanding the foregoing, the criminal proceedings terminated in Plaintiff's favor. The Superseding Indictment against Plaintiff was dismissed with prejudice, permanently foreclosing any further prosecution on these charges, which constitutes a favorable termination sufficient to support this claim irrespective of the reasoning given for the dismissal. *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

40. At the time Defendant's employees pursued the § 1512(c)(2) charge against Plaintiff, the legal theory under which that charge was brought, that the statute reached obstructive conduct generally rather than conduct impairing the availability or integrity of records, documents, or objects used in an official proceeding, was later rejected by the Supreme Court in *Fischer*. Following Fischer, the government undertook a review of all then-pending cases affected by that decision and identified fewer than ten nationwide in which it believed the evidence was sufficient to sustain a conviction under the statute's narrowed construction; of the two such cases tried before Plaintiff's sentence was commuted, both resulted in acquittal on the § 1512 counts. Plaintiff's prosecution was not identified in the government's own post-Fischer filings as among the cases it believed retained sufficient evidentiary support, and no filing by the government at any point in this litigation has asserted that Plaintiff's conduct satisfied Fischer's narrowed standard.

41. Defendant's employees acted with malice in initiating and continuing Plaintiff's prosecution under 18 U.S.C. § 1512(c)(2). Malice may be inferred from the absence of probable cause described above, and is further supported by the government's continued pursuit of the charge through a multi-week trial and sentencing notwithstanding the absence of any evidence that Plaintiff's conduct involved the impairment of records, documents, or objects used in an official proceeding, and by the jury's acquittal of Plaintiff on the two most serious charges in the

Superseding Indictment, Seditious Conspiracy and Destruction of Government Property, reflecting the disproportionate scope of the charges brought against her.

42. As a direct and proximate result of Defendant's malicious prosecution, Plaintiff suffered over four years of incarceration, emotional distress, reputational harm, and economic damages.

43. By reason of the foregoing, Plaintiff is entitled to recover compensatory damages against Defendant USA of America pursuant to the FTCA.

**AS AND FOR A SECOND CAUSE OF ACTION**

*(Negligent Conditions of Confinement and Medical Care (FTCA) As Against Defendant USA)*

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

45. Defendant, through its employees at the Montgomery County Jail, the United States Marshals Service, and the Bureau of Prisons, owed Plaintiff a duty of reasonable care with respect to her medical treatment and conditions of confinement while she was in their custody.

46. Defendant breached that duty, among other ways, by failing to treat Plaintiff's broken arm and ribs during her initial detention; by initially designating her to a men's facility despite her documented female gender identity; by canceling her scheduled skin-cancer biopsy and surgery prior to her transfer to BOP custody; and, through the conduct of Dr. Du described above, by administering hormone treatment at four times the medically appropriate dose for two to three months and continuing that regimen despite Plaintiff's repeated, documented objections.

47. As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical injury, kidney damage, increased cancer risk, and psychological trauma.

48. Plaintiff is entitled to recover compensatory damages against Defendant United States of America pursuant to the FTCA.

**AS AND FOR A THIRD CAUSE OF ACTION**
*(Negligent and Unauthorized Disclosure of Protected Health Information (FTCA) As Against Defendant USA)*

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Defendant, through pharmacy staff at FCI Tallahassee acting within the scope of their employment, owed Plaintiff a duty to safeguard her protected health information.

51. Defendant breached that duty when its pharmacy staff repurposed and dispensed to another inmate a medication container bearing Plaintiff's name, prescription information, and transgender medication, without fully redacting her identifying information, in a manner inconsistent with the standard of care reflected in 45 C.F.R. § 164.502 and related regulations. Defendant's own Health Services staff acknowledged the breach in writing the following day, characterizing the practice as "unacceptable" and stating that the Pharmacy had been counseled regarding it.

52. The unauthorized disclosure outed Plaintiff as transgender to another inmate, exposing her to a hostile environment, increasing her risk of physical harm, and causing profound humiliation and emotional distress.

53. As a direct and proximate result of Defendant's negligence, Plaintiff suffered emotional distress, reputational harm, and increased risk of physical harm.

54. Plaintiff is entitled to recover compensatory damages against Defendant USA pursuant to the FTCA.

**AS AND FOR A FOURTH CAUSE OF ACTION**
*(Assault and Battery (FTCA) As Against Defendant USA)*

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Lieutenant Holmes, an investigative or law enforcement officer of the USA within the meaning of 28 U.S.C. § 2680(h), while acting within the scope of her employment with the Bureau of Prisons, intentionally caused Plaintiff to apprehend imminent harmful and offensive contact, and intentionally made harmful and offensive contact with Plaintiff, without her consent and without legal justification, by body-slamming her from behind, shoving her face into a chain-link fence, and throwing hot coffee at her back while escorting her to the Special Housing Unit.

57. This conduct constitutes assault and battery under the law of the District of Columbia, actionable against the USA pursuant to the FTCA's law-enforcement-officer proviso, 28 U.S.C. § 2680(h).

58. As a direct and proximate result of this conduct, Plaintiff suffered physical injury and psychological trauma.

59. Plaintiff is entitled to recover compensatory damages against Defendant USA of America pursuant to the FTCA.

**WHEREFORE**, and for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in her favor:

(a) Awarding compensatory damages against Defendant USA of America on the First, Second, Third, and Fourth Causes of Action, plus post-judgment interest;

(b) Awarding Plaintiff reasonable costs and disbursements; and

(c) Awarding any such other and further relief as this Court finds just.

Dated: October 2, 2026

Respectfully submitted,

/s/Alexander Lonstein
Alexander Lonstein
RAISER, KENNIFF & LONSTEIN, P.C.
99 Park Avenue, Suite 1530

New York, NY 10016
alexander@rkl.law

By:

______________________________
Alexander Lonstein, Esq.
666 Old Country Road, Suite 509A
Garden City, New York 11530
Phone: (516) 742-7600
alexander@rkl.law
D.C. Bar Identification No. 67368

*Attorneys for Plaintiff*